**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No.: 0:20-cv-60409-RUIZ**

DEBORAH BONETA and
DIEGO BONETA,

      Plaintiffs,

v.

AMERICAN MEDICAL SYSTEMS, INC.

      Defendant.

_____/

**DEFENDANT AMERICAN MEDICAL SYSTEMS, INC.'S MOTION**
**FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiff Deborah Boneta was aware of her alleged injuries, and her healthcare providers informed her that she needed a "mesh excision" procedure to address her report of the sensation of mesh in her vagina, no later than March 2008.  Nevertheless, Plaintiffs didn't file this lawsuit until nearly eight years later.  Under Florida's four-year statute of limitations, all of Plaintiffs' claims are therefore time-barred, and this case should be dismissed with prejudice in its entirety.

**I.     STATEMENT OF UNDISPUTED FACTS**

      Ms. Boneta presented to Dr. Daniel Ead in April 2006, complaining of symptoms of stress urinary incontinence and pressure on her bladder and pelvis.  *See* excerpts from the Deposition of Deborah Boneta ("Boneta Dep."), Ex. A, at 33:22-34:16, 35:4-25; excerpts from the Deposition of Daniel Ead, M.D. ("Ead Dep."), Ex. B, at 11:10-15, 13:8-17, 15:20-23.[1]  Dr. Ead diagnosed Ms.

---

[1] All Exhibits are attached to AMS's Statement of Uncontested Facts, filed contemporaneously herewith.

Boneta with mixed urinary incontinence, nocturia, grade 2 cystocele, and female sexual dysfunction.  Ex. B at 17:22-25; *see also* Ex. A at 32:17-21.

On May 30, 2006, Dr. Ead implanted two AMS pelvic mesh products – an AMS Monarc Subfascial Hammock and a Perigee System with IntePro – in Ms. Boneta.  *See* excerpts from Plaintiff Fact Sheet ("PFS"), Ex. C, at p. 6; Ex. B at 27:6-11.

Beginning in December 2007, Ms. Boneta began complaining that she felt mesh in her vaginal introitus (the opening of the vagina) and that she was suffering from vaginal discomfort.  *See* Ex. D.  In her deposition, Ms. Boneta testified that she was experiencing bleeding and "friction" during intercourse, along with vaginal pain, at this time.  Ex. A at 101:24-103:10, 104:15-105:9.  Dr. Ead scheduled Ms. Boneta for surgery on March 27, 2008 to address Ms. Boneta's symptoms.  Ex. E; *see also* Plaintiff's Response in Opposition to AMS's Statement of Uncontested Facts filed August 24, 2020, ECF No. 92, at ¶¶1-2 (referencing AMS Facts Nos. 12-13).

The day before the March 27, 2008 surgery, Ms. Boneta signed a pre-admission questionnaire.  The questionnaire described the planned procedure as "transvaginal repair of mesh and scar tissue."  *See* Ex. F, at p. 1.  On the day of her surgery, Ms. Boneta signed an informed consent form.  The form stated that the purpose of the procedure was "transvaginal repair of mesh."  *See* Ex. G.  Just before Ms. Boneta was taken to the operating room, a nurse discussed the upcoming "transvaginal excision of mesh" with her.  *See* Ex. H.  Dr. Ead's operative report confirms that he removed vaginal scar tissue and "synthetic mesh material" from Ms. Boneta on March 27, 2008.  Ex. E, at p. 1.

Ms. Boneta returned to Dr. Ead on September 11, 2008, several months after her surgery. At that visit, Ms. Boneta complained of dyspareunia [*see* Ex. I], and Dr. Ead noted that Ms. Boneta

had "developed extrusion of mesh."  *Id.*  Dr. Ead also noted that he planned to schedule another mesh excision surgery and that he discussed the risks and benefits of the surgery with Ms. Boneta. *Id.*  On October 27, 2008, Ms. Boneta saw Dr. Jabal Uffelman, another gynecologist [*see* Ex. A at 114:3-11], again complaining of "dyspareunia from vaginal mesh."  *See* Ex. J.  Dr. Uffelman noted that Ms. Boneta was "referred for mesh excision."  *Id.*

Ms. Boneta testified that she lost health insurance for a period of time, in roughly 2009 or 2010 [Ex. A at 111:18-112:12], a possible explanation for a two-year gap in Ms. Boneta's medical records from March 2009 through February 2011.  The planned second excision surgery did not take place during this span, perhaps for this reason.  *See* Ex. A at 79:6-17 (testifying that the only surgical procedures she had undergone were the 2006 mesh implant, 2015 mesh removal, and procedures on her nose and wrist).

On March 22, 2011, Ms. Boneta returned to Dr. Uffelman.  *See* Ex. K.  The record notes that Ms. Boneta had a history of mesh erosion after her implant surgery; that she was diagnosed with vaginal mesh erosion, and that the plan was to schedule excision of mesh and scar tissue.  *Id.* Again, the excision surgery did not take place at this time.  *See* Ex. A at 79:6-17.  The medical records show that Ms. Boneta did not make any further complaints related to her mesh until April 2014, when she complained to her gynecologist, Dr. Carol McKenzie, of pelvic, abdominal and vaginal pain, and "[b]ladder mesh worries."  *See* Ex. L.

On August 26, 2015, Dr. Amir Shariati removed Ms. Boneta's Monarc sling.  Ex. C at p. 7; Ex. A at 57:23-25.  In August 2015, according to Ms. Boneta, she decided that she would file a lawsuit a lawsuit against AMS.  Ex. A at 12:19-21.  Plaintiffs filed this lawsuit on December 31, 2015.  *See generally* Complaint, ECF No. 1.

## II.      LEGAL ARGUMENT

### A.      Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322  (1986); *see also* Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  To discharge this burden, the movant must demonstrate that there is an absence of evidence to support the nonmoving party's case.  *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmovant must offer some "concrete evidence from which a reasonable juror could retain a verdict in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243, 256 (1986).  Concrete evidence requires more than a mere "scintilla" of evidence.  *Id.* at 252; *see also* *Matsushita*, 475 U.S. at 586 n.11 (the nonmoving party "may not rest upon the mere allegations or denials of [her] pleading[s], but instead must come forward with "specific facts showing that there is a genuine issue for trial").

Where the undisputed facts show that no genuine issues of material fact exist, summary judgment is appropriate as a matter of law.  *Byrnes v. Small*, No. 8:14-CV-1726-T-36MAP, 2014

WL 6609049, at *3-*4 (M.D. Fla. Nov. 20, 2014) (granting summary judgment for defendants where medical malpractice claims were time-barred).

### B.      The Statute of Limitations Bars All of Plaintiffs' Claims

"Statutes of limitation serve important purposes in our legal system and should be strictly enforced in all but the most egregious of circumstances." *Fields v. Mylan Pharm., Inc.*, 751 F. Supp. 2d 1260, 1262 (N.D. Fla. 2009) (quoting *Arce v. Garcia*, 434 F.2d 1254, 1265 (11th Cir. 2006)).  Florida has a four-year statute of limitations for product liability cases.[2]  Fla. Stat. § 95.11(3); *see also In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 200449MD2004CDL, 2016 WL 873814, at *2 n.1 (M.D. Ga. Mar. 4, 2016) (applying Florida law) (noting that the four-year statute of limitations applies to product liability claims, but also fraud, warranty and negligence).  The statute begins to run "from the time the cause of action accrues." Fla. Stat. § 95.031.

In Florida, the cause of action accrues "when the plaintiff discovers or, through the use of reasonable care, should have discovered, the injury." *Byington v. A.H. Robins Co.*, 580 F. Supp. 1513, 1515-18 (S.D. Fla. 1984) (finding plaintiff's cause of action accrued more than four years prior to the filing of the complaint and granting defendant's motion for summary judgment).  "The knowledge required to commence the limitation period . . . does not rise to that of legal certainty." *Univ. of Miami v. Bogorff*, 583 So.2d 1000, 1004 (Fla. 1991).  Rather, '[a]ll that is necessary is

---

[2] Plaintiff was a Florida resident at all relevant times, and her implant and revision procedures were performed in Florida.  PFS, Ex. C, at 3, 6-8.  Therefore, Florida law, and its statute of limitations, applies to her action.  *See Crowell v. Clay Hyder Trucking Lines, Inc.*, 700 So.2d 120, 122 (Fla. 2d DCA 1997) ("Florida applies the 'significant relationship test' . . . to choice of law issues arising from tort claims."); *Connell v. Riggins*, 944 So.2d 1174, 1177 (Fla. 1st DCA 2006) (in a choice of law analysis, consideration should be given to four main factors:  (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered).

that information be made available to Plaintiff so that she suspects, or after a reasonably diligent investigation should suspect, that the [product] contributed to her [injuries]." *Byington*, 580 F. Supp. at 1517.  In other words "[f]or the statute of limitations to begin running, a plaintiff must know that she suffered an injury and have enough information to connect the injury to defendant's product." *In re Mentor*, 2016 WL 873814, at *2.

In this case, Plaintiff herself knew that her mesh was the suspected cause of her symptoms. That is more knowledge than Florida law requires.  Under Florida law, a plaintiff need not have full medical knowledge for her cause of action to be deemed to have accrued; rather, she need only know of a "possible causal connection" between the product and her injury.  *See Oliver v. Bos. Sci. Corp.*, No. 2:13-CV-01736, 2015 WL 5838506, at *3 (S.D.W. Va. Oct. 5, 2015) (applying Florida law) (citing *Walls v. Armour Pharm. Co.*, 832 F. Supp. 1467, 1478 (M.D. Fla. 1993)).  This is because, "[i]f potential lay claimants were required to possess a professional level of knowledge before a cause of action was discoverable, then theoretically the claimants' action would almost never accrue." *Byington*, 580 F. Supp. at 1517.  Instead, Plaintiff's doctors' knowledge is imputed to her, because "this knowledge would be similarly available to Plaintiff upon the exercise of due diligence." *Doe v. Cutter Biological*, 813 F. Supp. 1547, 1555 (M.D. Fla. 1993), *aff'd*, 16 F.3d 1231 (11th Cir. 1994), 66 F.3d 342 (11th Cir. 1995); *see also In re Trasylol Prod. Liab. Litig.*, No. 08-80401, 2010 WL 6098570, at *8 (S.D. Fla. Mar. 8, 2010) ("Plaintiff attempts to make a triable issue of fact about the information contained in her medical records by testifying that she did not either remember or understand what her doctors told her, . . . [however] [w]hether plaintiff wanted to understand the relationship between the drug administration and her injury does not affect the fact that under Florida law knowledge of the information of accessible medical records is imputed to her.").  Critically, a Florida plaintiff need not know that her injury was caused by a "defect" in

the product; knowledge or reason to have knowledge of a connection between the product and her injury are sufficient. *See In re Mentor*, 2016 WL 873814, at *2 ("[P]laintiff did not point to any Florida authority establishing that a plaintiff who knows of a connection between her injuries and a product must also be aware that her injuries may have been caused by a product defect before the statute of limitations begins to run.").

Under similar circumstances – when, outside of the limitations period, plaintiffs' physicians told them that their mesh products were causing their symptoms and/or performed mesh revision surgery – courts in the Eleventh Circuit have routinely held that cases are time-barred under Florida law. *See, e.g.*, *In re Mentor*, 2016 WL 873814, at *1-*2 (statute of limitations began to run when plaintiff experienced vaginal discharge and bleeding, and her physician told her the pelvic mesh product had eroded and performed revision surgery); *Parcell v. Mentor Worldwide LLC*, No. 8:16-CV-3507-T-27TGW, 2017 WL 2462591, at *2 (M.D. Fla. June 6, 2017) (cause of action accrued when plaintiff presented with urine loss and vaginal discharge, was diagnosed with mesh erosion, and underwent removal of the mesh). The pelvic mesh MDL judge has also granted several summary judgment motions on similar facts under Florida's statute of limitations. *See Oliver*, 2015 WL 5838506, at *3 (S.D.W. Va. Oct. 5, 2015) (limitations period triggered a few weeks after implant when plaintiff told her physician she felt the sling was causing her alleged injuries); *Fleming v. Boston Scientific Corp.*, No. 2:12-cv-5131, 2015 WL 1405493, at *4-*5 (S.D.W. Va. Mar. 26, 2015) (cause of action accrued when plaintiff underwent procedure to remove exposed mesh, because she was aware that mesh "had been implanted inside of her and that she was experiencing adverse health effects").

Here, Plaintiffs' claims accrued no later than March 27, 2008, when Ms. Boneta underwent her first mesh revision surgery. By that time, Ms. Boneta had complained of the sensation of mesh

in her vagina, Ms. Boneta had signed an informed consent to mesh removal, she had been reminded that she was about to undergo mesh removal surgery on her way to the operating room, and the operative report from the surgery indicated that mesh was in fact removed during the procedure. In short, by March 27, 2008, Plaintiffs had all of the information necessary to connect the mesh to Ms. Boneta's alleged injuries.  Any self-serving assertion that Ms. Boneta did not actually make this connection until more than seven years later when she underwent a second mesh revision surgery is refuted by the medical records and does not save her claims from dismissal.  *See In re Trasylol Prod. Liab. Litig.*, 2010 WL 6098570, at *8 ("Whether plaintiff wanted to understand the relationship between the drug administration and her injury does not affect the fact that under Florida law knowledge of the information of accessible medical records is imputed to her.  Plaintiff provides no legal basis for the proposition that a plaintiff's self-serving testimony is sufficient to counter record evidence so as to create a triable issue of fact precluding summary judgment.").

Plaintiffs waited until December 2015—more than *seven years* after the first mesh revision procedure and more than *three years* after the March 2012 expiration of the limitations period—to file their lawsuit.[3]  As a result, all of Plaintiffs' claims—including the derivative loss of consortium and punitive damages claims—are time-barred, and AMS is entitled to summary judgment on all of the claims in this lawsuit.

---

[3] Even if Plaintiffs could assert some triable issue of fact to indicate that their claims did not accrue in March 2008, the undisputed factual record indicates that Ms. Boneta continued to complain of dyspareunia and was told in both September and October 2008—again, more than four years before the Complaint was filed—that she had mesh extrusion and that she should have another procedure to excise the mesh.  *See* Exs. I, J.

## III.     CONCLUSION

Plaintiffs failed to file this lawsuit within four years after their claims accrued, and their claims are therefore time-barred.  No disputed issues of material fact remain, and this Court should grant summary judgment in AMS's favor and dismiss the Complaint with prejudice.

Dated: August 25, 2020                                    Respectfully submitted,


                                                         */s/ Edward M. Mullins*
                                                         Edward M. Mullins, Esq.
                                                         Florida Bar No. 863920
                                                         Email: emullins@reedsmith.com
                                                         Christina Olivos, Esq.
                                                         Florida Bar No. 119580
                                                         Email: colivos@reedsmith.com
                                                         **REED SMITH LLP**
                                                         1001 Brickell Bay Drive, Suite 900
                                                         Miami, FL 33131
                                                         Telephone: (786) 747-0200
                                                         Facsimile: (786) 747-0299


                                                         Heather A. Ritch, Esq.
                                                         Email: hritchrocks@reedsmith.com
                                                         Admitted pro hac vice
                                                         Rachel B. Weil, Esq.
                                                         Email:  rweil@reedsmith.com
                                                         Admitted pro hac vice
                                                         **REED SMITH LLP**
                                                         1717 Arch Street, Suite 3100
                                                         Philadelphia, PA 19103
                                                         Telephone: (215) 851-8100
                                                         Facsimile: (215) 851-1420

                                                         *Attorneys for Defendant American Medical
                                                         Systems, Inc.*