UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60409-RUIZ/STRAUSS

**DEBORAH BONETA,** *et al.***,**

    Plaintiffs,

v.

**AMERICAN MEDICAL SYSTEMS, INC.,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before me for an evidentiary hearing on September 27, 2021. The District Court referred this matter to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for purposes of a non-jury evidentiary hearing on the issue of judicial estoppel and to take all action as required by law on said issue [DE 205]. Having considered the testimony and credibility of the witnesses,[1] the exhibits admitted into evidence, the arguments of counsel, the parties' post-hearing submissions [DE 251, 252, 253], and all other pertinent portions of the record, I respectfully recommend that the District Court adopt the findings of fact set forth herein and find in favor of Plaintiffs on the issue of judicial estoppel.

### FINDINGS OF FACT

**A. Plaintiffs' Bankruptcy Case**

1. On December 4, 2010, Plaintiffs filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida

---

[1] Both Plaintiffs and their former bankruptcy attorney, Donna Bumgardner, testified at the evidentiary hearing. I find that all three witnesses were credible.

(Bankruptcy Case No. 10- 47134-JKO).  Ex. D-27.[2]  Plaintiffs have not filed any other bankruptcy cases.  T. 20.[3]

2. Also on December 4, 2010, Plaintiffs filed their initial Bankruptcy Schedules, under penalty of perjury, along with their petition.  Ex. D-27.  On Schedule B-21 of their Bankruptcy Schedules, Plaintiffs listed "Personal Injury claim with the City of Ft. Lauderdale.  Proceeds, if any, will be committed to Chapter 13 plan to general unsecured."  *Id.* at 14.  No claims against Defendant were listed.

3. On March 19, 2011, Plaintiffs amended Schedule J (Current Expenditures) of their Bankruptcy Schedules.  Ex. D-29.  In other words, they updated their monthly expenses.

4. On July 11, 2012, Plaintiffs filed Debtors' Motion to Approve Personal Injury Settlement ("Motion to Approve") in the bankruptcy case.  Ex. D-31.  In the Motion to Approve, Plaintiffs sought bankruptcy court approval of a settlement of the personal injury claim listed on Schedule B-21.  *See id.*  In their Motion to Approve, Plaintiffs explained that the settlement proceeds would be used to pay unsecured creditors.  *See id.*

5. On December 31, 2015, the Chapter 13 Trustee filed a Notice of Completion of Plan Payments.  *See* Ex. D-33 ¶ 1.

6. Plaintiffs' bankruptcy case had not ended as of December 31, 2015.

7. Plaintiffs believed that their bankruptcy case had ended on or before December 31, 2015.  They credibly explained that they believed bankruptcy was over after they completed making their plan payments (in December 2015).

---

[2] At the evidentiary hearing, the following exhibits were admitted into evidence: D-10, D-14, D-16, D-17, D-27, D-28, D-29, D-31, D-33, D-35, D-36, P-2, and P-8.  Exhibits P-2 and P-8 are attached to DE 234.  The other exhibits are attached to DE 235.

[3] All references to "T. [page]" are to the Transcript of Zoom Evidentiary Hearing [DE 246].

8. On *or before* January 6, 2016, Plaintiffs signed under penalty of perjury Debtors' Certificate of Compliance, Motion for Issuance of Discharge and Notice of Deadline to Object ("Certificate"). Ex. D-33. The Certificate was filed in the bankruptcy case on January 6, 2016. *Id.* In the Certificate, Plaintiffs requested that the bankruptcy court issue a discharge. *Id.* ¶ 1. Ms. Boneta did not remember when Plaintiffs signed the Certificate, T. 47-49, and the evidence did not reveal the date on which Plaintiffs signed the Certificate. They may have signed it on January 6, 2016, or they may have signed it on some earlier date.

9. On June 28, 2016, Plaintiffs' bankruptcy case was closed. Ex. D-36. Although the bankruptcy case was not closed until that date, the Chapter 13 Standing Trustee's Final Report and Account (filed in the bankruptcy case on May 23, 2016) states that "[t]he case was completed on 12/15/2015." Ex. D-35 ¶ 5. This date appears to coincide with when Plaintiffs completed their bankruptcy plan payments, as they completed their plan payments sometime in December 2015. T. 45.

10. Plaintiffs generally understood that they had an obligation to disclose their assets and debts in their bankruptcy case. However, they did not appreciate the fact that they were obligated to disclose their claims against Defendant (in their bankruptcy case) at the time they realized they may have claims against Defendant. Nor were they ever prompted by counsel to provide such information at a time when they realized they may have such claims. When asked whether they ever knew during the pendency of the bankruptcy case that they needed to disclose the mesh lawsuit (the claims in this case) to the bankruptcy court, Plaintiffs credibly testified that they did not know. T. 66, 104-05.

11. During the pendency of their bankruptcy case, Plaintiffs did not inform their bankruptcy attorney that they had or may have claims against Defendant.

12. There is no evidence that Defendant was involved in Plaintiffs' bankruptcy case in any manner prior to it being closed in June 2016. Additionally, there is no evidence showing that Plaintiffs' failure to disclose their claims against Defendant in the bankruptcy case provided Plaintiffs any unfair advantage *over Defendant* or imposed any unfair detriment *on Defendant*. Relatedly, there is no evidence that Defendant was misled by Plaintiffs' non-disclosure or that Defendant relied on Plaintiffs' non-disclosure to its detriment.

### B. Plaintiffs' Litigation Against Defendant (this case)

13. Plaintiffs retained Schlesinger Law Offices, P.A. ("Schlesinger"), their counsel in this case, in August 2015. T. 37. As such, they knew or had reason to know that they may have claims against Defendant at that time. However, none of the evidence presented at the September 27, 2021 evidentiary hearing revealed that Plaintiffs knew or should have known that they may have claims against Defendant prior to August 2015.[4]

14. On December 31, 2015, the exact same day that the Chapter 13 Trustee filed the Notice of Completion of Plan Payments in Plaintiffs' bankruptcy case, Plaintiffs filed their Short Form Complaint [DE 1] in this case. The evidence did not show that the filing of both items on the same day was anything other than a mere coincidence.[5]

---

[4] This finding does not mean that Plaintiffs did not know of their potential claims (or have reason to know of their potential claims) against Defendant prior to August 2015. It should solely be interpreted to mean that the evidence presented did not indicate whether Plaintiffs knew or had reason to know they may have claims against Defendant prior to August 2015. I do not intend for this finding to have any impact on Defendant's statute of limitations defense.

[5] In footnote 9 of its brief [DE 253], Defendant indicates that "it reserves the right to challenge any ruling that the attorney-client privilege was not waived as to the question of Schlesinger's decision to file the Litigation *on the same day* that the Plaintiffs received notice that they completed their plan payments." Defendant argues that waiver on this subject matter occurred because "Schlesinger has repeatedly represented to this Court that it did not know of the Plaintiffs' Bankruptcy Case until after it filed the Litigation and that the filing of the Litigation *on the same day* as the Plaintiffs received notice that they completed their plan payments, was a mere

15. Ms. Boneta testified that Plaintiffs were still in bankruptcy – "towards the end of it" – when Plaintiffs retained Schlesinger in August of 2015. T. 44.

16. Ms. Boneta also testified that Plaintiffs were still in bankruptcy in December 2015, noting that Plaintiffs made their last bankruptcy plan payment sometime in December 2015. T. 44-45.

17. Mr. Boneta did not tell Schlesinger that Plaintiffs were in bankruptcy prior to the filing of this lawsuit. T. 85.

18. Plaintiffs verified their Plaintiff Profile Form ("PPF") required in this case (when it was a multi-district litigation matter) on February 15, 2016. Ex. D-14.

---

coincidence." However, my "mere coincidence" finding is not based on the argument of counsel. It is based on the simple fact that there was no evidence to suggest anything other than a mere coincidence. Nonetheless, Plaintiffs never put Schlesinger's advice at issue at the evidentiary hearing. In other words, they did not raise any advice of counsel defense with respect to any advice provided by Schlesinger. Thus, they did not waive the attorney-client privilege as to any discussions with Schlesinger. *See QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 286 F.R.D. 661, 663-67 (S.D. Fla. 2012). If anything, it is Defendant that has sought to put Plaintiffs' counsel's advice at issue to attempt to force a waiver, rather than Plaintiffs using the privilege as a "sword and a shield." *Cf. Lender Processing Servs., Inc. v. Arch Ins. Co.*, 183 So. 3d 1052, 1060-61 (Fla. 1st DCA 2015) ("A party does not waive the privilege merely by bringing a lawsuit or defending against one. Rather, waiver of the privilege occurs when a party raises a claim that will *necessarily* require proof by way of a privileged communication. . . . The possibility that the disputed documents may be relevant to or may assist the respondents in their defense or in their third-party claims, or may perhaps assist in the respondents' efforts to impeach the clients, does not create a waiver of the privilege." (cleaned up & internal citations omitted)).

Regardless, Defendant never actually sought to call any Schlesinger attorney or employee as a witness at the evidentiary hearing, and I never made any definitive ruling that Defendant would be prohibited from calling a Schlesinger representative at the evidentiary hearing. Moreover, even if there had been a waiver, none of Schlesinger's documents would have been within the scope of that waiver. That is because, even using Defendant's defined subject matter, none of Schlesinger's documents that were responsive to the pre-hearing subpoena served on Schlesinger – documents I reviewed *in camera* – addressed the decision to file this case on December 31, 2015.

5

19. Plaintiffs' PPF included a question asking whether Plaintiffs ever filed for bankruptcy. *Id.* at 4. Plaintiffs marked "yes." *Id.* The next question asked "[if] so, when." *Id.* Plaintiffs answered, "2010, Ended December[] 2015." *Id.*

20. Mr. Boneta testified that Plaintiffs are "not smart" to the legal system and that they did what their bankruptcy attorney told them they needed to do. T. 83-84.

21. Mr. Boneta acknowledged, in a general sense, that he needs to make sure a lawyer reviews his answers to legal questions because he is not an attorney. T. 109.

**C. Plaintiffs' Declarations Filed in Bankruptcy Case**

22. On April 19, 2021, Plaintiffs moved to reopen their bankruptcy case and filed sworn declarations in support of their motion to reopen. *See* Ex. D-16; Ex. D-17.

23. In their declarations, Plaintiffs attempted to explain why they had not previously disclosed their claims against Defendant in the bankruptcy case. *See* Ex. D-16; Ex. D-17. They indicated, *inter alia*, that: (i) it was not until August 2015 that they realized they may have claims against Defendant, Ex. D-16 ¶ 11; Ex. D-17 ¶ 12; (ii) they were not aware of any obligation to amend their bankruptcy schedules to reflect their claims against Defendant (and, therefore, did not amend their bankruptcy schedules upon realizing that they may have claims against Defendant), Ex. D-16 ¶¶ 13-14; Ex. D-17 ¶¶ 14-15; (iii) they did not intentionally fail to disclose the claims against Defendant during the pendency of the bankruptcy case, Ex. D-16 ¶ 15; Ex. D-17 ¶ 16; (iv) they would have disclosed the claims if they had known they had an obligation to do so at the time, Ex. D-16 ¶ 18; Ex. D-17 ¶ 19; and (v) they are not lawyers and "rely on advice of counsel regarding legal matters," Ex. D-16 ¶ 16-17; Ex. D-17 ¶ 17-18. Such statements are supported, or at the very least, not substantially undermined, by the evidence presented at the evidentiary hearing.

24. With respect to the "advice of counsel" statement, however, Plaintiffs did not mean that they specifically relied on advice of counsel in not disclosing their claims in the bankruptcy case. In fact, at the evidentiary hearing, Plaintiffs did not testify that they chose to not disclose the claims in the bankruptcy case based on the advice of counsel. Rather, the evidence showed that they did not disclose the claims in their bankruptcy case because they did not know that they were required to at the time they realized they may have claims against Defendant. Moreover, the evidence showed that Plaintiffs' bankruptcy counsel did not prompt them with any questions that would have elicited disclosure of their claims.

### D. Importance of Candor

25. Plaintiffs understand that it is important to be honest and forthright with their counsel and the courts. T. 18-19, 86.

26. Ms. Boneta acknowledged that it is important for debtors in bankruptcy to be honest and forthright with the bankruptcy court about their financial picture. T. 52.

27. Mr. Boneta acknowledged that for an attorney to properly advise a client, the client must provide the attorney with, in Defendant's counsel's words, "all of the relevant facts." T. 75.

28. Ms. Boneta acknowledged that it is important to provide honest and accurate information to your attorney in order for the attorney to provide sound legal advice. T. 19.

### E. Plaintiffs' Bankruptcy Counsel

29. On or about September 8, 2021, Plaintiffs' bankruptcy counsel, Donna Bumgardner, responded to a subpoena *duces tecum*, stating, *inter alia*, that (i) she was first informed about this lawsuit when Plaintiffs' new bankruptcy counsel filed the Motion to Reopen on April 19, 2021, (ii) there were no communications between her firm and Schlesinger, and (iii)

her firm had no responsive documents aside from documents filed on the public bankruptcy docket. *See* Ex. D-10.

30. Ms. Bumgardner has been a bankruptcy attorney since 1988. T. 122-23. A substantial portion of her practice includes representing debtors in Chapter 13 bankruptcy proceedings. T. 123.

31. Prior to filing bankruptcy petitions, Ms. Bumgardner obtains information (as part of her usual pattern and practice) from her clients regarding their assets, liabilities, income, and expenses. T. 124. She instructs her clients to inform her of changes, and in particular, emphasizes that they should inform her of changes in their *income or expenses*. T. 124, 125, 129, 131.

32. However, Ms. Bumgardner does not regularly check in with Chapter 13 debtor clients once their bankruptcy petition is filed. According to Ms. Bumgardner:

> There's really no need unless we have a concern or a problem. And my clients routinely contact me. Most of my 13s stay in contact with me pretty much, you know, at least every few months, every six months. If they have a problem, of course they contact me when they have a problem. We address that problem. But, no, I don't actually reach out to my clients on a regular basis because they reach out to me.

T. 128. Ms. Bumgardner tells clients to contact her if they have any problems, questions, or concerns regarding their case. T. 129.

33. Once a client's plan is confirmed,[6] Ms. Bumgardner sends the client a letter with a copy of the plan. Therein, she indicates, "this is the amount of payments you make and if you have any questions, problems or concerns, [] contact me." T. 133. However, she does not reach out to her Chapter 13 debtor clients on a regular basis after that. T. 133.

---

[6] Plaintiffs' Second Amended Plan was confirmed on April 27, 2011 (more than 4 years before this case was filed). Ex. P-8 at 2 ¶ 2.

### F. Plaintiffs Did Not *Intentionally* Conceal or Misrepresent Information

34. The evidence did not show that Plaintiffs *intentionally* concealed the existence of their claims (or potential claims) in this case from the bankruptcy court or their creditors.

35. The evidence did not show that Plaintiffs *intentionally* misrepresented information about their bankruptcy case.

## ANALYSIS

Defendant failed to establish that judicial estoppel bars Plaintiffs' claims. This Court previously determined that Florida's law of judicial estoppel applies in this case. *See Boneta v. Am. Med. Sys., Inc.*, No. 20-CIV-60409-RAR, 2021 WL 2037797 (S.D. Fla. May 21, 2021); *Boneta v. Am. Med. Sys., Inc.*, No. 20-CIV-60409-RAR, 2021 WL 917871, at *10-12 (S.D. Fla. Mar. 10, 2021). Under Florida law, a party seeking the invocation of judicial estoppel must establish the following elements:

> [1] A claim or position successfully maintained in a former action or judicial proceeding [2] bars a party from making a completely inconsistent claim or taking a clearly conflicting position in a subsequent action or judicial proceeding, [3] to the prejudice of the adverse party, [4] where the parties are the same in both actions, subject to the "special fairness and policy considerations" exception to the mutuality of parties requirement.

*Salazar-Abreu v. Walt Disney Parks & Resorts U.S., Inc.*, 277 So. 3d 629, 631 (Fla. 5th DCA 2018) (citations and footnote omitted). *See also Whittingham v. HSBC Bank USA, NA as Tr. for Holders of Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2007-OA1*, 275 So. 3d 850, 852 (Fla. 5th DCA 2019). "Stated differently, Florida's rule is that '[j]udicial estoppel applies when a party in a current proceeding has successfully maintained an inconsistent position in a prior proceeding to the prejudice of the adverse party in the current proceeding.'" *Salazar-Abreu*, 277 So. 3d at 631 (quoting *Landmark Funding, Inc. ex rel. Naples Syndications, LLC v. Chaluts*, 213 So. 3d 1078, 1080 (Fla. 2d DCA 2017)). "This requires 'not only a showing of inconsistent statements, but also

the identity of parties (or an exception to that requirement), the successful maintenance of the inconsistent position, and prejudice.'" *Id.* (quoting *Landmark Funding*, 213 So. 3d at 1080). As discussed herein, Defendant failed to establish the element of prejudice and failed to satisfy an exception to the mutuality element (it is undisputed that there is no mutuality here).[7]

### A. Prejudice

There is no evidence that Plaintiffs' failure to disclose their claims against Defendant in the bankruptcy case prejudiced Defendant. It is particularly telling that while Defendant recognizes in its post-hearing brief that prejudice is an element of judicial estoppel, *see* [DE 253] at 10, Defendant's brief does not discuss the prejudice element or even mention the word "prejudice" except when setting forth the judicial estoppel elements.[8] This is especially telling given that I made clear to the parties at the conclusion of the evidentiary hearing that their post-hearing briefs should "address each element under Florida law for the application of judicial estoppel and why or why not that element has been met." T. 139. The reality is that Defendant

---

[7] Because Defendant needed to establish all four elements, but did not satisfy the third and fourth elements, I do not analyze the first two elements in the body of this Report. Nonetheless, I note that the first two elements are satisfied notwithstanding Plaintiffs' contention to the contrary. That is because by failing to disclose their claims against Defendant in their bankruptcy case (the former action or judicial proceeding), when they had an obligation to do so (as this Court previously explained in denying summary judgment), Plaintiffs effectively represented that they did not have any claims against Defendant. In other words, they effectively represented, under penalty of perjury, that they had no lawsuits they could bring against anyone (aside from the scheduled personal injury claim). Now, by pursuing their claims against Defendant (in a lawsuit they filed while their bankruptcy case was still pending), Plaintiffs are making completely inconsistent claims or taking a clearly conflicting position. Moreover, they are doing so after they successfully obtained a discharge in their bankruptcy case without disclosing their claims against Defendant (and, thus, without their creditors being able to receive or share in any recovery from this case).

[8] As indicated above, prejudice and mutuality are separate elements. Additionally, it is the mutuality element that can be subject to the "special fairness and policy considerations" exception, not the prejudice element. Although Defendant cannot establish the prejudice element, the mutuality exception (which Defendant also cannot establish) is discussed in the next section.

10

failed to address the element of prejudice because, simply stated, there is absolutely no prejudice to Defendant.

"Prejudice occurs when the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Whittingham*, 275 So. 3d at 853 (quoting *Salazar-Abreu*, 277 So. 3d at 631 n.2) (internal quotation marks omitted). As noted above, *see supra* ¶ 12, Defendant failed to introduce evidence showing that it was misled by or relied on Plaintiffs' nondisclosure to its detriment,[9] that Plaintiffs' non-disclosure otherwise imposed some unfair detriment *on Defendant*, or that Plaintiff derived any unfair advantage *over Defendant*. Again, no evidence revealed any involvement on the part of Defendant in Plaintiffs' bankruptcy case prior to the case's June 2016 closure. Notably, as the Court previously pointed out to the parties, "Florida courts have consistently rejected the application of judicial estoppel to bar claims undisclosed in bankruptcy where the defendant seeking to invoke the doctrine was not involved in any way in the bankruptcy proceedings." *Boneta*, 2021 WL 917871, at *11 (collecting cases). "The rationale of the Florida courts in this regard appears to be that the use of judicial estoppel in such circumstances would only serve to

---

[9] Although some Florida courts have found that the Florida Supreme Court "appears to have dispensed with [a] requirement that the 'party claiming the estoppel must have been misled and have changed his position' by the other party's conduct in the earlier suit," *see, e.g.*, *Anfriany v. Deutsche Bank Nat'l Tr. Co. for Registered Holders of Argent Sec., Inc., Asset-Backed Pass-Through Certificates, Series 2005-W4*, 232 So. 3d 425, 428 (Fla. 4th DCA 2017) (citation omitted), the Florida Supreme Court recently indicated otherwise. *See Thompson v. DeSantis*, No. SC20-985, 2020 WL 5362111, at *2 (Fla. Sept. 8, 2020) ("Application of judicial estoppel involves many conditions. But '[a]t its core [the doctrine] requires a showing that a litigant successfully maintained a position in one proceeding while taking an inconsistent position in a later proceeding, and that the other party was misled and changed its position in such a way that it would be unjust to allow the litigant to take the inconsistent position.'" (quoting *Crawford Residences, LLC v. Banco Popular N. Am.*, 88 So. 3d 1017, 1020 (Fla. 2d DCA 2012))). Regardless, even though the court in *Anfriany* believed the specific requirement of being misled and changing position to no longer be a requirement, it still recognized that prejudice is an element of judicial estoppel, 232 So. 3d at 428, and as discussed in this Report, no prejudice to Defendant has been shown.

hinder a plaintiff's creditors whilst providing a windfall to defendants." *Id.* (citation omitted). Thus, while Plaintiffs' non-disclosure may prejudice the creditors whose debts were discharged in Plaintiffs' bankruptcy case, Defendant wholly failed to present any evidence of prejudice to Defendant.

### B. Exception to Mutuality

The "special fairness and policy considerations" exception to the mutuality element of judicial estoppel does not apply here. In a 2001 case, the Florida Supreme Court extended this exception, which had previously been recognized on occasion in the collateral estoppel and res judicata contexts, to the judicial estoppel context. *See Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1067 (Fla. 2001). Although it did not define the precise contours of this exception, and although only a handful of decisions applying Florida law have considered the applicability of the exception, both parties correctly note that the exception has been applied where a party uses "intentional self-contradiction to obtain an unfair advantage in litigation." *See Osorio v. Dole Food Co.*, No. 07-22693CIV, 2009 WL 48189, at *16 (S.D. Fla. Jan. 5, 2009) ("Even if the Chemical Company Defendants' positions taken . . . were inconsistent, the 'special fairness and policy considerations' come into play only if the Chemical Company Defendants were using 'intentional self-contradiction to obtain an unfair advantage in litigation.'" (quoting *Grau v. Provident Life & Acc. Ins. Co.*, 899 So. 2d 396, 401 (Fla. 4th DCA 2005))). *See also Boneta*, 2021 WL 917871, at *12 (same). Interestingly, the "self-contradiction" component appears to relate to the second judicial estoppel element (conflicting positions, which is present here), and the "unfair advantage" component appears to relate to the third element (prejudice, which is not present here). Nonetheless, the intentionality component does not appear to overlap with the other judicial estoppel elements. At any rate, as the findings of fact above make clear, Plaintiffs' self-

contradiction was *not intentional*, and again, as the prejudice section above makes clear, Plaintiffs certainly did not use self-contradiction *to obtain an unfair advantage in this litigation against Defendant*.

Defendant raises several arguments in support of its contentions that the exception is satisfied and that Plaintiffs were aware of their bankruptcy disclosure obligations, but Defendant's arguments are belied by the findings of fact above, which were guided, in part, by my credibility determinations. First, Defendant argues that Plaintiffs were aware they needed to disclose their claims in this case because the disclosure of the personal injury claim on Schedule B-21 shows that Plaintiffs knew they were required to disclose contingent and unliquidated claims. In support of this argument, Defendant notes that the District Court commented at a September 30, 2020 hearing that "there does seem to be general awareness on the part of the plaintiff of the duty to disclose, because they disclosed that pending suit." [DE 253] at 14. After hearing the evidence, I agree with that sentiment. There was certainly some "general awareness" on the part of Plaintiffs. But the two situations are very different – not in terms of disclosure being required, but in terms of whether Plaintiffs realized that disclosure of the particular claim was required at each particular point in time (nearly five years apart).

With the disclosed personal injury claim, Plaintiffs knew about it on day 1. Because they knew about it before filing their bankruptcy case, they disclosed it at the outset (when they likely would have discussed their petition date disclosure obligations with counsel at length). On the other hand, there is no evidence showing that Plaintiffs realized they had claims against Defendant prior to August 2015. At that point, it had been over four years since their Chapter 13 plan had been confirmed and since they had received guidance and prompting from their bankruptcy counsel about their disclosures. The evidence showed that Plaintiffs simply did not recognize that

they were required to, or even that they may be required to, disclose their potential claims against Defendant upon realizing the existence of the claims. Plaintiffs simply did not make a conscious decision to conceal the existence of their claims against Defendant (and they did not, as Defendant insinuates, consider the issue and choose not to consult their bankruptcy counsel because they were afraid of what the answer may be). There is perhaps a modicum of circumstantial evidence to suggest otherwise. However, having listened to the testimony, and having assessed Plaintiffs' credibility, I find the limited circumstantial evidence unconvincing.

Second, Defendant points to the fact that Plaintiffs' bankruptcy counsel instructed them (like she instructs all her clients) to provide any updates if circumstances change, even after plan confirmation, as evidence that Plaintiffs knew their obligations but intentionally disregarded them. I have no doubt that Plaintiffs' counsel provided the instructions that she regularly provides to clients. But the emphasis of such instructions was clearly focused on providing updates regarding *income and expenses* (changes that typical debtors may experience and that laypersons would intuitively recognize are relevant to their repayment plan). Here, however, the undisclosed information does not fall within the categories of income and expenses. Rather, the non-disclosure pertains to contingent, unliquidated claims that Plaintiffs apparently did not know they might be able to pursue until around August 2015, more than four years after plan confirmation and more than four years after they received specific guidance from counsel as to what they needed to disclose. *Cf. Montes v. Mastec N. Am., Inc.*, 132 So. 3d 1195, 1197 (Fla. 3d DCA 2014) ("At the time they filed their bankruptcy petition, it was unclear that a lawsuit would be filed at all. They had a bankruptcy lawyer for their bankruptcy petition, and a different lawyer evaluating their tort claim. The phrase 'contingent and unliquidated claim' is a legal term that may be confusing to a

lay person, particularly when it is as yet undetermined whether a particular pre-petition injury is actionable and ripe for filing.").

Third, Defendant notes that Plaintiffs were aware of their continuing disclosure obligations because they amended their monthly expenses on Schedule J during the pendency of their bankruptcy case. But Defendant overlooks two things: (1) Plaintiffs did so prior to plan confirmation; and (2) these changes fell within the two categories of information that Plaintiffs' bankruptcy attorney emphasized Plaintiffs would need to update during the course of their bankruptcy – income and expenses. Thus, this shows that Plaintiffs disclosed new/updated information when they knew they were required to do so. Their attorney emphasized that they needed to disclose changes in expenses, and they did just that. However, as discussed above, they did not recognize that they were required to do the same with respect to their claims in this case when they discovered them, apparently years later.[10]

In addition to the foregoing arguments Defendant raises regarding what Plaintiffs knew about their bankruptcy disclosure obligations, Defendant asserts that Plaintiffs intentionally provided a misleading response in their PPF by stating their bankruptcy case ended in December 2015. As an initial matter, even if Plaintiffs did intentionally provide a misleading or false answer in their PPF (they did not), that is not probative of whether there is some self-contradiction between positions they took in their bankruptcy case and in this case. Rather, Defendant appears to raise it

---

[10] Defendant's reliance on *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007) is misplaced. *Marrama* is factually and legally inapposite. It addressed an issue concerning pre-bankruptcy bad-faith conduct, which included the debtor making false and misleading statements in his initial schedules and admitting to transferring property for the purpose of shielding it from creditors. Here, however, the conduct at issue occurred several years post-petition and was not bad-faith conduct. Additionally, *Marrama* addressed the legal issue of whether the debtor's bad-faith conduct was a basis upon which the bankruptcy court could deny the debtor's request to convert the case from Chapter 7 to Chapter 13. No similar bankruptcy issue is involved here.

to further suggest Plaintiffs' willingness to dissemble to gain some perceived advantage. In any event, I find that Plaintiffs believed they were being honest when they indicated that their bankruptcy case ended in December 2015. They had just completed making five years of monthly payments in connection with their bankruptcy case. It is reasonable that Chapter 13 debtors would primarily focus on completing their payment plan as the crux of their bankruptcy. To them, the bankruptcy was over, as they had completed everything they believed they were obligated to do. While the case technically remained open, I find Plaintiffs' testimony (as laypersons) that they thought it ended in December 2015 to be credible. Defendant, however, contends that Plaintiffs should have reached out to their bankruptcy attorney when filling out the PPF to clarify or confirm when the bankruptcy case ended. But I agree with Mr. Boneta that, under the circumstances, it would not have occurred to him that such consultation was necessary. It would be one thing if Plaintiffs did not believe they knew the answer, but they honestly believed that their bankruptcy case was over when they finished making plan payments. Thus, there would have been no reason to reach out to their bankruptcy attorney to find out how to fill in one short blank (in a form unrelated to the bankruptcy case) when Plaintiffs thought they knew the answer.

In light of the foregoing, the exception to mutuality is clearly not satisfied. Plaintiffs did not *intentionally* self-contradict in order to gain some unfair advantage in this litigation; nor is there any evidence or argument as to what that unfair advantage in this case would be. Nonetheless, I note an additional issue. Applying the exception in this case would seemingly extend far beyond prior applications of any exception to mutuality. In this regard, I find the Florida Second District Court of Appeal's decision in *5F, LLC v. Dresing*, 142 So. 3d 936 (Fla. 2d DCA 2014) to be instructive (if not controlling). In *Dresing*, the court considered the limited circumstances in which an exception to mutuality may apply. It recognized, "[t]he Second District

cases that recognize an exception to the general rule regarding mutuality of parties either involve a significant legal relationship between the party in the prior action and the party asserting collateral estoppel or a mutual interest in the same matter." *Id.* at 947.[11] Here, though, there is no evidence of any significant relationship between Defendant and any party (creditor) to Plaintiffs' bankruptcy case. Nor is there any evidence of a mutual interest in the same matter. In fact, it is in Defendant's interest to avoid having to pay anything out in connection with this case. However, it was in Plaintiffs' creditors' interest to see more funds come into Plaintiffs' bankruptcy estate. Thus, the narrow exception to mutuality is not appropriate for this case, and regardless, it fails on both the "intentional" and "unfair advantage" components.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court find that judicial estoppel does not preclude Plaintiffs from pursuing their claims in this case.

The parties will have seven (7) days from the date of being served with a copy of this Report and Recommendation within which to file written objections,[12] if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28

---

[11] Although *Dresing* dealt with collateral estoppel rather than judicial estoppel, as indicated above, the exception to mutuality in the judicial estoppel context is the same as the exception in the collateral estoppel context. Indeed, the exception was extended from the collateral estoppel context to the judicial estoppel context.

[12] Although parties usually have fourteen (14) days to file any written objections, the parties agreed to shorten the time to file any such objections to seven (7) days. T. 140.

U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

    **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 11th day of October 2021.

*[signature]*
Jared M. Strauss
United States Magistrate Judge